Maya, can you hear me? Yes, I can. Good. Everything, you can see well, and the sound is good. Good. Yeah, you can mute yourself now until the time, but thank you so much. Thank you. Winograd? Thank you, Your Honor, and may it please the Court. We raised two arguments in this case, one substantive and one procedural. At the outset, I just wanted to address how those arguments fit together and whether the The substantive argument, of course, is that my client was not convicted of a crime involving moral turpitude or CIMT. In many cases, whether a crime involves moral turpitude is a threshold jurisdictional question that the Court must reach first. But in this case, the jurisdictional bar does not apply because my client was not actually charged with removability for having been convicted of a CIMT. So if the Court prefers, it could instead reach our procedural argument first, which is that the Board should have referred the case to a three-member panel. Now, whether the Court needs to resolve both arguments depends on which argument it addresses first. If the Court resolves the substantive argument first, the procedural argument would become moot because there would be nothing more for the Board to decide on remand. Likewise, if the Court starts with and agrees with our procedural argument, it would not need to reach the substantive argument. By contrast, if the Court starts with and rejects our procedural argument, it would then also need to reach the substantive argument. So with that being said, unless the Court prefers otherwise, I will start by addressing the substantive argument. Now, the Board in this case found that the statute was a CIMT for one and only one reason. It states that defendants must have an intent to defraud. But under the categorical approach, the question is not simply what the text of the statute says, but how that statute has been applied by state appellate courts. So the true question before this Court is whether the intent that Virginia prosecutors must establish to obtain a conviction is the same as the intent that the Board has long used as a test for moral turpitude. Now in the CIMT context, the Board has long held that an intent to defraud requires an intent to deprive the victim of his or her property. Now that intent is similar to what this Court requires for wire fraud, which is the intent to cause harm by depriving another of something of value. So in short, an intent to defraud, yes. In the case that requires that, the intent to defraud is a named element of the crime in the underlying statute. I'm not familiar of any case involving the argument that we're raising where an intent to defraud is a named element, but the argument is that state appellate courts have interpreted that language so as not to require an intent to defraud for federal purposes. I'm not aware of any such case, but there is a case that we cite in a brief called Mungro, where similarly this Court found that the North Carolina Supreme Court's interpretation of its burglary statute was actually much narrower than the text would seem to suggest. So the point simply is that an intent to defraud does not simply require an intent to deceive, but an intent to cause harm through deception. Now, by contrast, in upholding my client's conviction, the Virginia Court of Appeals did not require prosecutors to show that he actually intended to deprive the bank of its money. The Court found an intent to defraud simply because he used a social security number that did not belong to him, and the decision makes clear that the statute would have been violated, even assuming that the loan was fully repaid. Now, so by analogy, imagine a person obtains a rental car using someone else's driver's license, but they return the car by the required time and date. That person may have deceived the rental car company, but he did not defraud the rental car company. And so, too, here, as applied by the Virginia Court of Appeals, the statute requires an intent to deceive rather than an intent to defraud. And in this court's decision in Nunez-Vasquez, it held that an intent to deceive standing alone is not sufficient for a crime to involve moral turpitude when you're dealing with a private person or entity, as we have here. So did the Virginia Court actually say that the intent to repay is irrelevant on the question of intent to defraud? Its analysis is in a separate part of the decision, but the decision separately makes clear that it is irrelevant whether the bank was repaid, and that's the part of the decision dealing with loss. And in that part, it actually found that there was no evidence that the loan was not fully repaid. And then in footnote eight of the decision, it makes clear that the statute would be violated by someone who used a false social security number, even if they did fully repay the loan. But so to answer your question, it was not in the section of the decision involving an intent to defraud, but the decision as a whole, I think, makes clear that the statute would be violated even if the loan was fully repaid. So our view is that the statute in this case is very similar to statutes that the board has held in other cases not to involve moral turpitude. So the board has held, for example, that writing a check with insufficient funds is not a CIMT if the perpetrator intended to replenish the account before the check was cashed. It is also held that if any goods... Yes. The distinguishing factor in all these cases that you cited is that the underlying statute, unlike the one in this case, does not have the intent to defraud as an enumerated element in the statute. I don't believe that's correct, Your Honor. In one of those cases, the matter of Bailey, that was the case involving the Kansas statute. And that statute did include the words intent to defraud. And the board said that the way it was used in the Kansas statute was a term of art that was distinct from the intent to cheat or deprive a person of his property. So that is a case where the board has found a statute not to be a CIMT, even though the text of the statute included the words intent to defraud. And the other case I was saying, it's a matter of Kinney, that involved obtaining goods under false pretenses, which is very similar to what happened here. And the board found that that was not a CIMT because perpetrators could violate the statute even if they intended to ultimately pay for the goods. So we think the logic of those decisions suggests that providing false identifying information to obtain a loan does not require an intent to defraud if the perpetrator can ultimately intend to repay the loan. And again, my client's conviction, in our view, was upheld in the absence of any evidence that he intended to deprive or did in fact deprive the bank's property. Now, even if the court agrees with my argument involving the intent to defraud, the question does still remain whether the minimum conduct punishable under the statute involves moral turpitude. And again, we think the decision of the Virginia Court of Appeals in my client's own case demonstrates that it does not. The decision makes clear that a... Yes. I've looked back through a matter of Bailey, and I'm not seeing where the intent to defraud was the enumerated element in the underlying statute. It's... I'm looking at the original reported version. The text of the statute is laid out at the bottom of page 679. It's quite a long statute, and it's in the second paragraph of that statute. And then the reference to the discussion of it is, I believe, on page 680. The board discussion where it talks about it being... I'm sorry, my apologies, on page 681. And the board says... The term intended to defraud as used in the section is a term of art which refers not to a proof of an intent to cheat, but to mere proof that a check was drawn with knowledge of the non-existence of the funds to pay it. So, as I was saying, the Virginia Court of Appeals decision in this case, we read it to make clear that a person can be prosecuted for making up a social security number that they did not know belongs to another person, even if the bank did not rely on that number, and, again, even if the bank did not lose any money because of the loan. Now, we do recognize that, unlike the statute at issue in Nunez-Vazquez, the statute in this case does require the identifying information to belong to an actual person as opposed to a fictitious person. But we don't think that distinction is meaningful because, again, there is no requirement that the defendant actually know that the number belongs to another person. And, as importantly, in Nunez-Vazquez, this court cited my client's own case as an example, seemingly as an example of conduct that did not involve moral turpitude. And we don't see why Nunez-Vazquez would have cited my client's case, Salazar, if it believed that my client's own conduct did involve moral turpitude. We also recognize that there was another distinction insofar that for a felony violation, some party does have to incur a financial loss. But in addition to being unintentional, the loss can include voluntary expenditures by the victim. So, in this case, for example, the victim was only found to have suffered a financial loss because he signed up for a credit monitoring service after he started receiving correspondence in my client's name. And those type of expenditures typically are not even subject to restitution, much less direct criminal liability. So, again, by analogy, consider a case in which a thief committed petty larceny by stealing something of minimal value, say a garden gnome from a person's front yard. And then in response, the victim installed a very expensive security system in hopes of catching the thief if he returned to steal something else. In that scenario, it would be very odd for a jurisdiction to charge the thief with grand larceny rather than petty larceny based on the value of the security system. But that is effectively the regime that is in place for this specific statute. Again, the financial loss in my client's case only resulted because the victim spent money on a product of his own accord. And we believe that harm should not be sufficient to turn a statute that would otherwise not be a CIMT into a CIMT. And then finally, even if the court thinks that my client's own conduct did involve moral turpitude, we think the plain text of the statute would apply to someone who used a social security number simply to obtain a job. And multiple circuits and the board itself have found that that conduct, violation of that federal statute, is not a CIMT. Now, for its part, the theme underlying the government's argument... Can I ask you about that? So how does obtaining a job fall under the definition of goods, services, et cetera, that the statute seems to require? Well, we believe it would mean to obtain money. I'm sorry. If I could return to that on rebuttal, Your Honor. Sure. So, but in any event, I mean, our primary argument is that the decision in Salazar itself makes clear that the statute does not involve moral turpitude. The government, for its part, seems to argue that the court should find the statute to be a CIMT because of the overall consequences of identity theft on society at large. But this court and the board have never adopted that type of approach. As an example, the board has long held that driving under the influence, simple driving under the influence, is not a CIMT. And this court held in Cabrera that participation in a criminal street gang is not a CIMT. Now, no one could dispute that driving under the influence or participating in a criminal street gang is harmful to society at large, just as no one could dispute that identity theft is harmful to society at large. But under the categorical approach, we do not look to the combined effect of all violations of the statute. We look at the minimum conduct that is required for any one violation of the statute. And for the reason we've explained, you know, unwittingly providing another person's social security number to obtain a loan that one fully intends to repay and does in fact repay, we would submit is not sufficient to find that a crime involves moral turpitude. If the court has no further questions about the substantive claim, the procedural argument is simply that the board was required under its own regulations to refer the case to a three-member panel. The regulations allow a single member to decide a case in a brief order, but require referral to a three-member panel in any case involving a novel or complex issue. And the board decision in this case was not brief. I see I'm out of time if I could just finish that thought. And courts have repeatedly noted that whether an offense qualifies as a CIMT under the categorical approach is invariably complex. May it please the court, your honors. My name is Robin Goliah. I represent the Attorney General on this matter. Just beforehand, I'd like to thank the court for letting me appear by video. In this case, the statute specifically refers that under which Mr. Salazar was convicted specifically refers to with the intent to defraud. And he used someone's identifying information, which is discussed in Section C of the statute, which includes all sorts of personally identifiable information. He used that on a mortgage application. And I note that Social Security numbers are rarely listed anymore because of the fear of them being stolen or anything like that. You hardly ever see one fully indicated. Oftentimes, they're either totally blacked out or by some sort of means, or they're only partially provided. The board properly considered this court, the board properly considered how the courts considered this statute and have interpreted this specific statute. The plaintiff or the petitioner in this case did not have to know that the number belonged to somebody else. And the Salazar court noted in its decision specifically that it was undisputed that Salazar intentionally filled out and submitted a loan application using a Social Security number that was not his. There is no innocent explanation for such an action. This fact alone was sufficient to allow a reasonable fact finder to conclude beyond a reasonable doubt that Salazar had the intent to defraud the lender when he used the victim's Social Security number on the loan application. And subsections D, E, and F all refer to losses. And Mr. Salazar was found to have caused a loss to the actual Social Security number holder, Mr. Childers, I think was his last name. And the fact that he's trying to argue this is deceit, the statute is explicit about defraud. The Virginia cases that have discussed this provision, and we cite to Taylor versus Commonwealth, I believe is the name of it, all refer all indicated fraud was required that in Salazar indicate fraud is required to have be convicted under this statute, not deceit. The Supreme Court has said that statutes involving fraud are crimes involving moral turpitude, and the agency properly pre-determined this cancellation application. This is a pretty much simple CIMT type case, and it did not warrant a three-member panel to discuss this, especially when it had the Salazar case before it that indicated the various, what he needed, what needed to be showed. It indicated intent was the intent that was required, and that was to defraud specifically. So we think that the court should deny the petition for review. If there are no questions. Thank you, Ms. Breyer. Thank you. I just want to address Judge Diaz's question. The current version of the statute refers to a person who obtains money, credit, loans, goods, or services through the use of identifying information of such other person. So our argument would be that using a false social security number to obtain a job would be an attempt to obtain money. I am not certain that that money language was included in the statute when my client violated the statute. I will certainly clarify with the court through a 28-J letter. Well, I guess even if it's true, I mean, the question is whether or not there's a realistic probability that the Virginia courts would apply the statute in that way, and you don't have a case. We don't have a case, but this court held in Gordon v. Barr that a case isn't required when the plain text of a statute makes clear that a statute could apply to certain conduct. So we would be relying on the plain text here rather than an actual case. At this point, we're not aware of any actual cases. Unless the court has further questions about the CIMT issue, just to return very briefly to the procedural argument, at the time that the board issues a decision, it, of course, has no way of knowing whether it will result in a petition for review, much less whether a case will go to oral argument. That being said, the fact that so few cases go to oral argument, particularly in this court, the fact that the court found this case was sufficiently complex or worthy of oral argument, I think is a sign that the board, at a minimum, should have referred the case to a three-member panel rather than a single member. Likewise, if there is any division on the court as to whether the crime involves moral turpitude, I think that itself would counsel a remand for consideration by a three-member panel. I guess the problem, though, is even if we had some qualms about that, how do we have jurisdiction to review something like that, given that the regulations don't suggest that a failure to comply with that edict provides any procedural or substantive right on the part of a petitioner? Oh, because this court held in Conteros-Mendoza. That was before the regulation was changed, no? I don't believe it was. I will double-check that. I don't believe it was. And I think the court's analysis, likewise, I think just kind of rejects the premise of that argument. If I recall, I believe the Third Circuit specifically rejected that argument in ProVegan, which was a case decided in 2006, seeming to indicate that the regulation was in place at that point. And it squarely rejected that argument, saying that the fact that an agency may not have intended for its decision to be subject to review has no impact on whether a court actually has jurisdiction to review it. All right. Thank you. Thank you.
judges: Roger L. Gregory, G. Steven Agee, Albert Diaz